# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:18-cr-00102-MR

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ARLEN FLORES, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss Indictment [Doc. 19].

## I. PROCEDURAL BACKGROUND

On August 8, 2018, the Defendant was charged in a Bill of Indictment with three counts of aggravated sexual abuse of a child in Indian country, in violation of 18 U.S.C. §§ 2241(c) and 1152, and one count of abusive sexual contact in Indian country, in violation of 18 U.S.C. §§ 2244(a)(5) and 1152. [Doc. 1]. In each Count, the Indictment alleges that the Defendant is a non-Indian and that the victim is "M.F., an Indian"; that the date of offense is between January 2017 and July 2017 and occurred "in Swain County, in

Indian country"; and that at the time of each offense, the victim had not yet attained 12 years of age. [Id.].

The Defendant made his initial appearance on August 13, 2018. His arraignment was held on August 15, 2018, at which time he entered a plea of not guilty. On September 13, 2018, the Defendant requested an extension of the deadline for filing pretrial motions to October 15, 2018 [Doc. 18], which the Court granted [Text-Only Order entered Sept. 14, 2018]. On October 15, 2018, the Defendant filed the present Motion to Dismiss. [Doc. 19]. The Government filed its Response in opposition on October 22, 2018 [Doc. 23], and on October 29, 2018, the Defendant filed a Reply [Doc. 24]. Having been fully briefed, this matter is ripe for disposition.

## II. ANALYSIS

In each count of the Bill of Indictment, the Defendant is charged pursuant to 18 U.S.C. § 1152, which applies the general laws of the United States to crimes perpetrated upon Indians by non-Indians. It is undisputed that the Defendant is a non-Indian and that the alleged crimes occurred in Indian country. The Defendant contends, however, that the Government cannot establish an essential element of these offenses because the

Government cannot prove that the victim was an enrolled member of the Eastern Band of Cherokee Indians (EBCI) at the time the offenses occurred.[1]

Under Rule 12 of the Federal Rules of Criminal Procedure, the Court may dismiss an indictment on a pretrial motion to dismiss "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." United States v. Hill, 700 F. App'x 235, 236 (4th Cir. 2017) (quoting United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012)). Here, the victim's status as an Indian "while essential to federal subject matter jurisdiction, is an element of the crime that must be submitted to and decided by the jury." United States v. Stymiest, 581 F.3d 759, 763 (8th Cir. 2009) (discussing prosecutions under 18 U.S.C. § 1153). Accordingly, the Court concludes that the Government should be permitted to submit evidence at trial about the victim's Indian status before the Defendant may seek dismissal of the Indictment on these grounds.

The Defendant contends that the Government can prove the victim's Indian status only by demonstrating that she was an enrolled member of the EBCI at the time of the offense. Contrary to the Defendant's argument,

---

[1] It is undisputed that although the child victim was not an enrolled member of the EBCI at the time of the offenses occurred, she became an enrolled member in May 2018.

however, the victim's Indian status may be established in a variety of ways. "The generally accepted test for Indian status considers (1) the degree of Indian blood; and (2) tribal or government recognition as an Indian." United States v. Bruce, 394 F.3d 1215, 1223 (9th Cir 2005) (citation and internal quotation marks omitted); see also United States v. Rogers, 45 U.S. (4 How.) 567, 573 (1846). Both prongs must be met. Bruce, 394 F.3d at 1223. Regarding the first prong, only some degree of Indian blood is required. As the Bruce court explained:

> The first prong requires ancestry living in America before the Europeans arrived, but this fact is obviously rarely provable as such. Because the general requirement is only of "some" blood, evidence of a parent, grandparent, or great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy this prong.

Id. at 1223 (citations omitted). The second prong, that of tribal or government recognition as an Indian, is judged by four factors: "1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition as an Indian through residence on a reservation and participation in Indian social life." Id. at 1224; see also United States v. Cruz, 554 F.3d 840, 846 (9th Cir. 2009). While tribal enrollment is commonly employed to establish Indian status, "it is not the only means nor is it

necessarily determinative." United States v. Broncheau, 597 F.2d 1260, 1263 (9th Cir. 1979); accord United States v. Antelope, 430 U.S. 641, 646 n. 7 (1977) ("enrollment in an official tribe has not been held to be an absolute requirement for federal jurisdiction") (citations omitted); United States v. Keys, 103 F.3d 758, 761 (9th Cir. 1996) (noting victim's lack of enrollment "does not control the determination of her 'Indian' status"); Ex parte Pero, 99 F.2d 28, 31 (7th Cir. 1938) ("The lack of enrollment ... is not determinative of status.... [T]he refusal of the Department of Interior to enroll a certain Indian as a member of a certain tribe is not necessarily an administrative determination that the person is not an Indian."); St. Cloud v. United States, 702 F. Supp. 1456, 1461 (D.S.D. 1988) ("[A] person may still be an Indian though not enrolled with a recognized tribe.").

The Defendant's reliance on United States v. Zepeda, 792 F. 3d 1103 (9th Cir. 2015), cert. denied, 136 S. Ct. 1712 (2016), is misplaced. In Zepeda, the court was primarily concerned with the Indian status of the defendant, not the victim, and specifically with whether the "blood quantum" prong required the government to prove a defendant's blood relationship to an Indian tribe recognized by the federal government (that is, whether the federal-recognition requirement applied to both prongs). See id. at 1110-13. The Ninth Circuit held that the government needed only to prove two things:

5

"(1) proof of some quantum of Indian blood, whether or not that blood derives from a member of a federally recognized tribe, and (2) proof of membership in, or affiliation with, a federally recognized tribe." Id. at 1113. The Zepeda court then reiterated the standard set in Bruce that enrollment is but one means of proving a link to a federally recognized tribe.² Id. at 1114-15.

The Defendant further argues that a requirement of tribal enrollment in order to show Indian status is necessary, at a minimum, to fulfill basic notions of due process because without an enrollment requirement, a defendant would have no notice of a victim's special status. This argument is without merit. A defendant's knowledge of a victim's Indian status is not an element of the offense, so it is not necessary for any defendant to be able to predict whether his chosen victim is an Indian or not. The Indian status elements relate to jurisdiction, and the Government need not prove that a defendant had actual knowledge of a jurisdictional element. See, e.g., United States v.

---

² The Defendant relies heavily upon one quote from the Zepeda opinion in which the Ninth Circuit noted that "the government must prove that the defendant was an Indian at the time of the offense with which the defendant is charged." [Doc. 20 at 8 (quoting Zepeda, 792 F.3d at 1113)]. The Defendant contends that if the Government must prove the Defendant's status at the time of the offense, the same must be true with respect to the victim. This quote, however, is simply dicta, as timing was not at issue in that case; rather, the court was primarily concerned with whether a defendant choosing to affiliate or disaffiliate from a federally recognized tribe would affect his charges. In this case, however, the victim was a minor who would not be making such choices, yet the tribe recognized her as an Indian nevertheless (whether or not she was formally enrolled at the time).

Robinson, 137 F.3d 652, 655 (1st Cir. 1998) (holding that the government does not need to prove that the defendant actually knew that his conduct affected interstate commerce); Torres v. Lynch, 136 S. Ct. 1619, 1631 (2016) ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.") (quoting United States v. Feola, 420 U.S. 671, 677, n.9 (1975)); United States v. Iannelli, 477 F.2d 999, 1002 (3d Cir. 1973) ("The jury does not have to find knowledge of such jurisdictional elements in order to convict."). Even if such knowledge were an element, however, the Government could easily satisfy it in this case. The Defendant is the victim's father. As such, he would have knowledge that the victim was an Indian due to her mother's Indian status, and he may even have had influence as to whether enrollment was pursued regarding the victim during her minority. As such, the Defendant's due process arguments are meritless.

In sum, the Defendant's motion to dismiss is denied. The Government will be permitted to present evidence at trial of the victim's Indian status, and the victim's lack of enrollment at the time the offenses allegedly occurred is not dispositive of that issue.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss Indictment [Doc. 19] is **DENIED**.

**IT IS SO ORDERED.**

Signed: December 12, 2018

Martin Reidinger
United States District Judge